## LIABILITY OF TENANT FOR UNAUTHORIZED OCCUPANCY BY A SUBTENANT OF ADJOINING PREMISES.

Circuit Court of Cuyahoga County.

BARDONS & OLIVER v. WILLIAM J. CRAWFORD.

Decided, November 1, 1909.

*Landlord and Tenant—Tenant of Tenant Holding Over—Special Findings.*

1. A lessee of land adjoining premises of his own upon which are tenements used by his own tenants can not be held for occupancy of said adjoining premises after termination of the lease thereof, simply because his tenants continued to make use of said adjoining land, unless it be shown that they did so with his knowledge and consent.

2. It is not error to refuse to direct the jury to make special findings requested in the event they bring in a general verdict, if the special findings submitted are not so framed as to test the general verdict.

*Thompson & Hine,* for plaintiff in error.
*Samuel C. Blake,* contra.

WINCH, J.; HENRY, J., and MARVIN, J., concur.

This was an action to recover for the use and occupation of a strip of land owned by plaintiffs adjacent to certain flats or tenements of the defendant which had been originally leased to the defendant to be used by him as a means of access to said tenements. The lease was from month to month and was terminated February 1, 1903, by the plaintiffs who then demanded an increased rent. The defendant refused to pay more, but was alleged to have held over and continued to use the strip of land, not personally, but through tenants. The jury found for the defendant.

It was shown at the trial that previous to February 1, 1903, and before he was notified of the termination of the lease, the defendant had collected of the United States Express Company a certain sum of money for the use of said strip of land as a

rear entrance to said company's land up to April 1, 1903. The express company was not a tenant of the defendant, but used premises adjacent to both parties. It was also shown that there were coal holes on plaintiff's strip of land connected with defendant's tenements; that after notified that he could not longer use said strip of land at the old rental, the defendant put steps to the rear windows of his tenements opening upon a new way on his own premises, called Lakeview court, and some time later cut said windows into doors but did not close up the doors opening onto plaintiff's land, nor said coal holes. It was also shown in evidence that the tenants continued to use said doors opening onto plaintiff's lands and said coal holes after February 1, 1903.

It was also claimed that defendant had not notified his tenants to cease to use the premises in question, but the only evidence on this subject was the testimony of the defendant himself who said that he had notified them to cease using the plaintiff's premises, except in the case of one Nicholls who did not become a tenant until September 1, 1903, and when he took possession of his flat the entrance onto Lakeview court was fully completed. Nicholls and his wife testified that Crawford said nothing to them about the use of plaintiff's land.

Conceding the law of the case to be that, upon the termination of his lease from plaintiffs, it was the defendant's duty to notify his tenants that they should no longer use the plaintiffs' premises, still we can not say that the jury was wrong in finding for the defendant. They might well have believed that the tenants continued said use notwithstanding their landlord forbade them to; it can not be maintained that it was the defendant's duty to board up the openings referred to.

It is claimed as prejudicial error, however, that the trial court refused to submit certain interrogatories propounded by the plaintiff to be answered by the jury in the event it should return a general verdict, as provided in Section 5201, Revised Statutes. These questions are as follows:

"Did defendant collect rent for the use of the ten foot strip of plaintiff's premises from the United States Express Company,

covering a period subsequent to February 1st, 1903, and if so, for how long a period?''

This question was cleverly worded to avoid asking when he collected the rent, for the record shows that Crawford received it before he knew that plaintiffs would terminate his monthly tenancy.

Manifestly an answer to this question would not tend to show whether Crawford held over after notified that his lease was terminated, and the petition does not claim anything due plaintiffs by reason of this payment of the express company.

The next question was: ''Were the coal holes on plaintiff's land used by defendant's tenants after February 1st, 1903, and if so, for how long?''

There was evidence tending to show such use, but the liability of the defendant depended upon his consent thereto. No question was asked, which, taken with this question, would tend to determine the defendant's knowledge of or acquiescence in such use.

The same objection arises as to the next question:

''After the doors were cut in the tenements on Fairview court, did the tenants of defendant continue to use plaintiffs' premises as a means of entrance and exit?''

Another reason for rejecting this interrogatory is that no Fairview court was mentioned in the evidence. There was a Lakeview court opened by defendant, but no Fairview court.

These two questions if answered most favorably to the plaintiffs would not tend to ''test the correctness of the general verdict.'' The Supreme Court has several times stated that such must be the intent of the questions. *Electric Railroad Co.* v. *Hawkins,* 64 O. S., 391.

His tenants' continued use of the coal holes and strip of land would be repeated trespasses on their part, and have no tendency to prove the liability of the defendant, unless followed up with proof of Crawford's acquiescence therein or failure to notify them to cease such use. No question covering this important link in the chain was submitted and the court therefore, very promptly declined to submit the whole series of questions.

To have given them without reference to Crawford's consent or neglect to notify, would have tended to mislead the jury as to the foundation for their general verdict.

The last question was: "Did W. J. Crawford notify his tenant, Chas. Nicholls, that he must not use plaintiff's ten foot strip of land?" As Nicholls did not move in until six months after his landlord's right to use this strip had terminated and until after the tenement was fully provided with other proper entrances, we think the defendant was under no obligation to notify his tenant not to trespass upon the adjoining premises.

We find no error in rejecting these interrogatories, and the judgment is affirmed.